UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

TORRI R. THOMAS

                              Plaintiff,

          v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                              Defendant.

─────────────────────────────────

                              **REPORT
                                and
                            RECOMMENDATION**

                            **15-CV-012A(F)**

APPEARANCES:          LAW OFFICES OF LEWIS L. SCHWARTZ
                      Attorneys for Plaintiff
                      LEWIS L. SCHWARTZ, of Counsel
                      1231 Delaware Avenue
                      Suite 103
                      Buffalo, New York 14209

                      JAMES P. KENNEDY
                      ACTING UNITED STATES ATTORNEY
                      Attorney for Defendant
                      KRISTINA DANIELLE COHN
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza
                      Room 3904
                      New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on July 21, 2015. (Doc. No. 9). The matter is presently before the court on motions for judgment on the pleadings, filed on July 20, 2015, by Plaintiff (Doc. No. 8), and on September 23, 2015, by Defendant (Doc. No. 11).

## BACKGROUND

Plaintiff Torri Thomas, ("Plaintiff" or "Thomas"), seeks review of Defendant's decision denying her Supplemental Security Income ("SSI") ("disability benefits") under, Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of cannabis abuse/dependence, major depressive disorder, recurrent severe anxiety disorder and post-traumatic stress disorder ("PTSD"), but that Plaintiff's dental pain, broken teeth, tooth abscess, ankle, neck, back, lower back and right shoulder pain were not severe impairments, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 19-22). [2] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform work at all exertional levels with the limitations of occasional interaction with the public, occasional understanding, remembering and carrying out complex and detailed instructions, and that Plaintiff was limited to simple, unskilled work. (R.54-55). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

onset date through the date of the Administrative Law Judge's decision on August 20, 2013.

## PROCEDURAL HISTORY

Plaintiff filed her application for disability benefits on October 11, 2011 (R. 119), that was initially denied by Defendant on February 10, 2012, and, pursuant to Plaintiff's request filed February 22, 2012 (R. 79), a hearing was held before Administrative Law Judge Timothy M. McGuan ("McGuan" or "the ALJ"), on March 13, 2013, in Buffalo, New York. (R.38-58). Plaintiff, represented by Lewis Schwartz, Esq. ("Schwartz"), appeared and testified at the hearing (R. 40-54), along with vocational expert ("VE") Josiah Pearson ("Pearson" or "VE"). The ALJ's decision denying Plaintiff's claim was rendered on August 20, 2013. (R.17-33). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on November 7, 2014. (R. 1-6). This action followed on January 5, 2015, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Doc. No. 1).

On July 20, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 9) ("Plaintiff's Memorandum"). Defendant filed, on September 2, 2015, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on September 23, 2015 ("Plaintiff's Reply Memorandum") (Doc. No. 11). Oral argument was deemed unnecessary. Based on the following, Plaintiff's

motion for judgment on the pleadings should be DENIED; Defendant's motion for judgment on the pleadings should be GRANTED.

## FACTS[3]

Plaintiff Torri Thomas, ("Thomas" or "Plaintiff"), was born on September 11, 1975, completed high school, and lives with her two children.  (R. 119).  Plaintiff alleges that she is not able to work as a result of her anxiety and depression, neck and back impairments.  (R. 71).

Relevant to Plaintiff's medical history and alleged impairments, on October 30, 2008, Plaintiff underwent a psychiatric assessment at Horizons Health Center ("Horizons"), where an unidentified counselor diagnosed Plaintiff with Axis I[4] major severe depressive disorder, and anxiety not otherwise specified ("NOS"), Axis II deferred diagnosis, Axis III inflammatory pelvic disease, and Axis IV problems relating to social environments.  (R. 260).  On March 8, 2010, Plaintiff was involved in a car accident, and sought treatment at Sisters of Charity Hospital in Buffalo, New York ("Sisters Hospital"), for neck, back, and shoulder pain, right arm pain and numbness.  (R. 211).

---

[3] Taken from the pleadings and administrative record.
[4] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors, and Axis V, global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

Relevant to the period of disability review in this case,[5] On October 19, 2011, Plaintiff sought treatment at Erie County Medical Center emergency room ("ECMC"), in Buffalo, New York for dental pain. Upon examination, Plaintiff was prescribed ibuprofen and an antibiotic and was referred to a dentist. (R. 241).

On October 21, 2011, Plaintiff received mental health counseling at Horizons and reported that she was abused by her mother as a child, and was placed into foster care after being removed from her mother's care. (R. 686). Plaintiff reported that Plaintiff did not trust any of her family members, and that her mother was her biggest stressor and contributor to Plaintiff's anxiety. *Id.*

On January 30, 2012, Hingbiao Liu, M.D. ("Dr. Liu"), completed a consultative internal medical examination on Plaintiff on behalf of the Social Security Administration, and evaluated Plaintiff with the ability to walk on her heels and toes with mild difficulty, and limited range of motion ("ROM") to Plaintiff's cervical spine with flexion measured at 35 degrees, and left and right rotation measured at 70 degrees. Plaintiff's lumbar ROM was measured at 20 degrees upon left and right lateral rotation, with positive straight leg raising test[6] results in the seated and supine positions. (R. 266). Dr. Liu diagnosed Plaintiff with chronic neck pain, low back pain, shoulder pain, anxiety and depression, and opined that Plaintiff had a mild limitation to routine activities and should avoid heavy lifting, carrying, bending, kneeling, and overhead reaching. (R. 267).

---

[5] SSI benefits are payable in the month following the month the application for benefits was filed. *See* 20 C.F.R. § 416.335. The period of review in this case is therefore November 1, 2011 until August 20, 2013, the date of the ALJ's determination.
[6] A straight leg raising test is a postural manipulation that is used in the seated and supine position to evaluate an individual's lumbar spine.

On January 30, 2012, Renee Baskin, M.D. ("Dr. Baskin"), completed a consultative psychiatric examination on Plaintiff on behalf of the Social Security Administration, and evaluated Plaintiff with anxious and tense affect, limited insight, fair judgment, mildly impaired recent and remote memory skills, and mild impairment to Plaintiff's attention and concentration as a result of the evaluation. (R. 353-55). Dr. Baskin diagnosed Plaintiff with depressive disorder NOS, anxiety disorder NOS, PTSD, and cannabis dependence, and opined that Plaintiff had moderate limitation to maintain attention and concentration and a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others and dealing appropriately with stress, and minimal to no limitation to following and understanding age-appropriate directions and completing age-appropriate tasks. (R. 271).

On February 9, 2012, Cheryl Butensky ("Ms. Butensky"), a state agency review psychologist reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and mental residual functional capacity assessment on Plaintiff, and opined that Plaintiff had a moderate limitation to maintain social functioning and concentration, persistence or pace, mild limitation to completing activities of daily living, and mild to moderate limitation to sustaining concentrating and attention, adapting to changes in a routine work setting, and interacting with co-workers and supervisors. (R. 299).

On February 17, 2012, Plaintiff sought treatment at Sisters Hospital for body aches, vomiting, fever and nausea. (R. 341).

On March 7, 2012, Plaintiff sought treatment at the emergency room at ECMC for severe abdominal pain with nausea and vomiting, and reported that she experienced

similar symptoms as a result of her from depression in the past. (R. 315). Plaintiff returned to ECMC with similar symptoms on March 18, 2012. (R. 313).

On April 27, 2012, Plaintiff sought treatment at Kenmore Mercy Hospital ("Kenmore Mercy"), in Kenmore, New York for abdominal pain, nausea and vomiting where a computerized tomography ("CT") scan returned negative results. (R. 369). Plaintiff returned to Kenmore Mercy on April 29, 2012 (R. 398), June 3, 2012 (R. 419), July 22, 2012 (R. 434), and August 11, 2012 (R. 450) with similar symptoms, and visited ECMC on August 4, 2012 (R. 308), and September 2, 2012 (R. 302), with anxiety associated with abdominal pain and nausea.

On July 13, 2012, Plaintiff sought treatment for a broken tooth at Sisters Hospital. (R. 346).

On December 1, 2012, Plaintiff sought treatment at Kenmore Mercy emergency room for nausea and anxiety, and reported that she was "out partying" and experienced nausea and anxiety during her trip home. (R. 462).

Plaintiff attended mental health counseling at Horizons from December 3, 2012, until the date of Plaintiff's administrative hearing on March 13, 2013. (R. 529-61, 661-92).

On December 9, 2012, Plaintiff sought treatment at Buffalo General Hospital for anxiety, body pain, and toe cramps. (R. 586). Abdominal X-rays taken the same day were normal. *Id.*

Plaintiff returned to Sisters Hospital on December 29, 2012 (R. 630), and January 29, 2013 (R. 640), with symptoms of nausea and vomiting.

## DISCUSSION

**1.    Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to

perform any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.    Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion."  *Consolidated*

*Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also*

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.    Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 3, 2011, the date of Plaintiff's application for benefits.  (R. 19).  Plaintiff does not contest this determination.

**C.    Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do

"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of cannabis abuse/dependence, major depressive disorder, recurrent severe anxiety disorder and PTSD, that Plaintiff's dental pain, broken teeth, tooth abscess, ankle, neck, back, lower back and right shoulder pain were not severe impairments, and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c).  (R. 19-22).

Plaintiff contends that the ALJ's step two disability finding is erroneous, as the ALJ's failure to consider Plaintiff's neck, low back, and right shoulder as severe impairments resulted in a flawed residual functional capacity assessment of Plaintiff. Plaintiff's Memorandum at 18-22.  Plaintiff points to evidence of Plaintiff's car accident on March 8, 2010, and Dr. Liu's opinion on Plaintiff's exertional limitations on January 30, 2012, in support of Plaintiff's contention.  Plaintiff's Memorandum at 19.  Defendant maintains that no error attributes to the ALJ's step two findings, as most of the treatment that Plaintiff received for injuries to Plaintiff's back, neck, and shoulder resulted from Plaintiff's car accident on March 8, 2010, and prior to the relevant period of disability (R. 24), that Plaintiff sought treatment for her neck pain on only one occasion during

11

November 10, 2012 (R. 22, 356), and denied neck and back pain during Plaintiff's visits to local emergency rooms for abdominal symptoms.  Defendant's Memorandum at 25.

Step two of the disability review analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and findings of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).  Step two severity determinations require ALJs to complete a careful evaluation of medical findings to inform the ALJ's judgment as to each impairment's limiting effects on the claimant's physical and mental abilities to perform basic work activities, using medical evidence to assess the effects the claimant's impairments have on the claimant's ability to complete basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856, at *4 (1985).  An ALJ's failure to account for a claimant's impairment does not normally require remand where substantial evidence supports the mere presence of the impairment, and the ALJ accounts for the impairment within the ALJ's residual functional capacity assessment.  *See Lowe v. Colvin,* 2016 WL 624922, at *2 (W.D.N.Y. Feb. 17, 2016).  While the regulation requires ALJs to consider impairments that a claimant states that he or she has, or those "about which [the ALJ] receive[s] evidence" *see* 20 C.F.R. § § 404.1512(a); 416.912(a), in this case, the ALJ properly considered injuries sustained by Plaintiff in the car accident Plaintiff suffered on March 8, 2010.  Specifically, the ALJ noted that the record contained no evidence that Plaintiff experienced or received treatment for her neck or back pain for the period between February 11, 2011 and

February 1, 2013, other than Plaintiff's singular visit to the emergency room on November 10, 2012, and Plaintiff's visit to Dr. Liu on January 30, 2012. (R. 21-22). The ALJ further noted that Plaintiff's physical examinations and X-rays were normal during 2011 and 2012. Substantial evidence thus supports the ALJ's finding that Plaintiff's neck back and shoulder pain were not severe impairments under step two of the ALJ's disability analysis, and Plaintiff's motion on this issue is without merit.

**D.    Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety related disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.09 ("§ 12.09") (Substance addiction disorders). Plaintiff does not contest the ALJ's findings under step three of the disability review process.

Treating Physician's Rule[7]

Plaintiff alleges that the ALJ violated the treating physician rule by affording Dr. Liu's finding that Plaintiff had no exertional limitations no weight, and substituting the ALJ's own opinion for the opinion of Dr. Liu.  Plaintiff's Memorandum at 11, 21.  In particular, Plaintiff contends that the ALJ erred in evaluating the weight afforded to Dr. Liu's consultative opinion by not weighing Dr. Liu's opinion in accordance with the six factors set forth under 20 C.F.R. § 416.927(c) (§ 416.927(c)"), and evaluating Dr. Liu's opinion with regard only to § 416.927)(c)(4), the consistency of Dr. Liu's opinion with other evidence in the record.  Plaintiff's Memorandum at 12.  Defendant maintains that Plaintiff's argument is unavailing, as Plaintiff exhibited only some reduction in Plaintiff's range of motion, and that Plaintiff's activities of daily living and treatment records support that Plaintiff had full range of motion of Plaintiff's upper and lower extremities. Defendant's Memorandum at 19.  Plaintiff's contention is without merit.

It is the responsibility of the ALJ to weigh the record evidence and determine which medical source opinion is supported by medical evidence in the record and deserves more weight.  *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (where medical opinions are inconsistent, ALJ's have discretion to apportion weight to the opinions).

Under 20 C.F.R. § 416.927(c), ALJs are required to consider the following factors in weighing medical opinions of treating and non-treating physicians, and provide reasons for the weight assigned to each medical opinion:

---

[7] Recent revisions to the Code of Federal Regulations have eliminated the treating physician's rule effective March 27, 2017.  As here, such revisions are not applicable to decisions issued prior to that date.

    (1) Examining relationship
    (2) Treatment relationship
    (3) Supportability
    (4) Consistency
    (5) Specialization
    (6) Other relevant factors

20 C.F.R. § 416.927(c).

As relevant, 20 C.F.R. § 416.927(e)(2)(ii) provides

> When an administrative law judge considers findings of a State agency  medical
> or psychological consultant or other program physician, psychologist; or other
> medical specialist, the administrative law judge will evaluate the findings using
> the relevant factors in paragraphs (a) through (d) of this section, such as the
> consultant's medical specialty and expertise in our rules, the supporting evidence
> in the case record, supporting explanations the medical or psychological
> consultant provides, and any other factors relevant to the weighing of the
> opinions.

    Accordingly, the treating physician rule provides the framework for reviewing

agency consultant findings. The undersigned proceeds to review Plaintiff's allegations

under the rules set forth under § 416.927(c), the treating physician's rule.

    While Plaintiff correctly asserts that the ALJ erred in not discussing each of the

six factors set forth under § 416.927(c), no error impairs to the ALJ's findings.  Dr. Liu

examined Plaintiff on only one occasion (January 30, 2012), reaching a singular opinion

not entitled to more weight than other opinions in the record under § 416.927(c)(1) or §

416.927(c)(2).  No other medical evidence serves to support Dr. Liu's opinion that

Plaintiff has moderately diminished range of motion such that Dr. Liu's opinion should

be afforded more weight under § 416.972(c)(3).  Significantly, Dr. Liu's signature

denotes that Dr. Liu specializes in "nuclear medicine," a specialty not closely aligned

with evaluating skeletal range of motion.[8]  The ALJ was thus not required to afford more weight to the opinion of Dr. Liu under §  416.927(c)(5).  As none of the six factors under § 416.927(c) support that the ALJ was required to assign more weight to the opinion of Dr. Liu, Plaintiff's motion on this issue is without merit.

Residual Functional Capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.   *Parker*, 626 F.2d 225 at 231.   To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.   *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."   *Id*.   An individual's exertional capability refers to the

---

[8] A specialist in nuclear medicine uses radioactive material to diagnose or treat a variety of diseases.  *See* https://www.aamc.org/cim/specialty/exploreoptions/list/us/336848/nuclear_medicine.html. Last  visited on June 23, 2017.

performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels and perform simple, unskilled work with occasionally detailed tasks and occasional interaction with the public. (R. 26).

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[9] *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the

---

[9] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Plaintiff contends that the ALJ erred in accepting some, but not all, of the limitations set forth in Dr. Baskin's January 30, 2012 psychiatric evaluation of Plaintiff in the ALJ's residual functional capacity assessment, specifically, limitations to Plaintiff's ability to maintain concentration and attention. Plaintiff's Memorandum at 23. Defendant maintains that the ALJ accounted for a moderate limitation to Plaintiff's ability to maintain concertation and attention by limiting Plaintiff to simple, unskilled work with occasional detailed tasks. Defendant's Memorandum at 19.

ALJs are "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole," and residual functional capacity assessments may not perfectly correspond with any individual medical opinion. *See Matta v. Astrue,* 508 Fed. App'x 53, 56 (2d Cir. 2013). As Defendant correctly asserts, in reaching this assessment the ALJ included a limitation to Plaintiff's ability to maintain concentration and attention by restricting Plaintiff to unskilled work. *See Landers v. Colvin*, 2016 WL 1211283, at *4 (W.D.N.Y. March 29, 2016) (citing *Sipe v. Astrue,* 873 F. Supp. 2d 471, 481 (N.D.N.Y. 2012) (limiting claimant to simple repetitive tasks accounts for limitations to maintain attention and concentration)). The ALJ thus accounted for Plaintiff's limited ability to maintain concentration and attention. Plaintiff's motion on this issue is therefore without merit.

**E.    Suitable Alternative Employment in the National Economy**

Plaintiff contends that the improperly rejected the VE's testimony that excessive absenteeism would deem Plaintiff unemployable and disabled.[10]  Plaintiff's Memorandum at 14.

During the administrative hearing held on March 13, 2013, the ALJ posed a hypothetical question to the VE of whether an individual like Plaintiff, but limited to occasional interaction with the public, capable of occasionally understanding, remembering and carrying out complex and detailed tasks, limited to unskilled work would be able to perform any jobs in the regional or national economies (R. 54), and asked the VE to provide a list of jobs that such an individual would be capable of performing, to which the VE opined would include the positions of  production helper, unskilled work with a medium exertional level, with 420,910  jobs available in the national economy and 1,380 job positions available in the regional economy (R. 55), and small parts assembler, unskilled, light work with 223,910 jobs available in the national economy and 150 jobs positions available in the regional economy.  (R. 55).

Upon questioning, Plaintiff's counsel asked the VE whether an individual, with all of the limitations posed by the ALJ in the first hypothetical with the additional limitation of being off-task one-third of the workday, would be able to successfully perform the jobs listed by the VE, to which the VE opined that being off task for one-third of the workday would degrade the individual's ability to successfully perform any of the jobs available in response to the ALJ's first hypothetical question.  (R. 56).

---

[10] Plaintiff relies on *Patel v. Colvin,* 2013 WL 3873234, at *6 (E.D.N.Y. July 25, 2013), a case factually distinguishable from the case before this court.

As Defendant correctly maintains, Defendant's Memorandum at 22, and discussed previously, Discussion, *supra*, at 16-18, the ALJ's residual functional capacity assessment that includes no limitation to Plaintiff being off-task for one-third of a workday is supported by substantial evidence in the record.  The VE's testimony based on such residual functional capacity assessment is therefore also without error.  *See Kennedy v. Astrue*, 343 Fed. Appx. 719, 722 (2d Cir. 2009) (no remand where hypothetical questions by ALJ are based on residual functional capacity assessment supported by substantial evidence).  Plaintiff's motion on this issue is therefore without merit.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 10) should be GRANTED; Plaintiff's motion for judgment on the pleadings (Doc. No. 8) should be DENIED, and the Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       June 27, 2017
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      June 27, 2017
            Buffalo, New York